DILLON, Judge, dissenting.
I agree with the majority that this case is technically moot. The 2014 election is over. However, because I conclude that the issues raised are "capable of repetition, yet evading review," my vote is not to dismiss this appeal based on mootness. Accordingly, I respectfully dissent.
I. Background
In August 2014, the State Board of Elections (the "Board") exercised its authority to implement a plan (the "2014 Plan") designating early voting sites in Watauga County for the 2014 general election. N.C. Gen.Stat. § 163-227.2 (2013). The 2014 Plan adopted by the Board included a number of voting sites throughout Watauga County, including one location within one mile of the Appalachian State University ("ASU") campus.
In September 2014, seven county residents filed a "Petition for Judicial Review" in Wake County Superior Court seeking an order to compel the Board to include a voting site on ASU's campus.
On 13 October 2014, ten days before early voting began, the superior court held a hearing on the petition and issued an order (the same day), concluding that the Plan-requiring would-be ASU students who wanted to vote early to travel one mile to cast the vote-constituted a "significant infringement of [ASU] student rights to vote and rises to the level of a constitutional violation of the right to vote[.]" Accordingly, the court compelled the Board to provide a site on ASU's campus.
On 16 October 2014, the Board filed its notice of appeal to our Court. However, by the time the record on appeal was settled and the appellate briefs had been filed, the 2014 general election was well over.
*16 II. Discussion
The issues pertaining to the 2014 Plan are technically moot; however, the issues involved are exactly the type which are "capable of repetition, yet evading review[.]" See Reep v. Beck, 360 N.C. 34, 40, 619 S.E.2d 497, 501 (2005) (recognizing the "capable of repetition, yet evading review" exception as one of the "longstanding exceptions to the mootness rule"). Accordingly, I conclude that the mootness doctrine does not apply.
The Watauga County Board of Election and the Board, which are statutorily empowered to choose the location of "one stop" early voting sites in Watauga County, are each controlled by the sitting Governor's political party.[5] N.C. Gen.Stat. § 163-227.2(g) (2015). In choosing the sites, these boards are afforded some discretion, so long as the decision is not violative of applicable state or federal laws or of the state and federal constitutions. Whatever decision is made on the site locations, certain voters will be required to travel farther than other voters in order to take advantage of early voting.
In 2012, the Democratic-controlled boards decided to locate an early voting site on ASU's campus, requiring voters who lived near ASU to travel to the campus to vote (or to a more remote location). The 2014 Plan adopted by the Republican-controlled boards, however, would have provided a site which was more convenient than the 2012 on-campus site for certain voters but less convenient for ASU students living on campus. To be sure, politics may have played some part in the decisions of both boards, but their decisions are nonetheless permissible unless violative of state or federal law or our state or federal constitutions. In the same way, our General Assembly has some discretion to consider politics in drawing our congressional and legislative districts, see Hunt v. Cromartie, 526 U.S. 541, 551, 119 S.Ct. 1545, 1551, 143 L.Ed.2d 731, 741 (1999), see also Dickson v. Rucho, 368 N.C. 481, 485, 781 S.E.2d 404, 437 (2015) (recognizing "partisan advantage"
*191 as a "legitimate governmental interest[ ]"), provided the maps do not violate controlling state or federal laws or our state or federal constitutions.
*17 It is now 2016, and the Republicans are still in control of the Watauga County and State boards of elections. The United States Supreme Court has recognized that cases challenging election practices which may otherwise become moot due to an election being held should be nonetheless decided as the issues involved are likely to recur in subsequent elections. Morse v. Republican Party of Va., 517 U.S. 186, 235 n. 48, 116 S.Ct. 1186, 1214 n. 48, 134 L.Ed.2d 347, 382 n. 48 (1996). Here, the election practice at issue is likely to recur in the 2016 general election. However, like in the present case, any appeal regarding the 2016 general election would most likely not be in a position to be resolved by our state appellate courts until well after the election has been held.
In conclusion, I believe the "election practice" issues are ripe for our consideration despite the fact that the 2014 election is over. There is another election just around the corner, and the Watauga County Board will again be faced with whether their plan must provide a voting site on ASU's campus. Accordingly, I believe we should resolve this issue and not dismiss the appeal merely because the 2014 election is over.[6]

Control by the Governor's party is not mandated, but occurs in practice. The State Board of Elections is set up to be controlled by the Governor's political party as its five members are appointed by the Governor and the Governor is allowed to have a majority come from his/her own party. N.C. Gen.Stat. § 163-19 (2015). The State Board, in turn, appoints each county board's three members, and is allowed to have a majority (two) of each county board to come from the Governor's political party. N.C. Gen.Stat. § 163-30 (2015)

Also, even if the issues do not fit the criteria for being capable of repetition, yet evading review, I believe that the matter raised here involves substantial issues of public interest-issues involving the integrity of our election process-and, therefore, we should resolve the issues, notwithstanding the fact that the 2014 election is over. These issues include, for example, the scope of the authority of boards of elections to choose early voting sites, the standing of voters to seek judicial review of a decision by a board of elections regarding the location of early voting sites, and the proper procedure to challenge such decisions made by a board of elections.